IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

MIGUEL ARELLANO, #26960-078      §
     §
VS.      §      CIVIL ACTION NO. 4:21cv108
     §      CRIMINAL ACTION NO. 4:17cr38(2)
UNITED STATES OF AMERICA      §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is *pro se* Movant Miguel Arellano's motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255. After reviewing the case, the Court concludes that Movant's § 2255 motion should be denied and dismissed with prejudice.

## I.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The United States Court of Appeals for the Fifth Circuit discussed the factual and procedural history of Movant's case as follows:

> The defendant in this case, Miguel Arellano, was arrested after delivering nearly five kilograms of cocaine to an undercover police officer. In the car with him when he delivered the drugs was a duffel bag containing some articles of clothing, other personal effects, and a closed pouch containing an unloaded handgun and two magazines of ammunition.
>
> Arellano was indicted by a grand jury for conspiracy to possess five kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and he entered into plea negotiations with the government. An agreement was evidently reached, and the government then charged Arellano via information with conspiracy to possess five hundred grams of cocaine, a crime with a lesser mandatory minimum sentence, *see* 21 U.S.C. § 841(b)(1).
>
> At a hearing before the magistrate judge, the elements of the charge were read aloud, and Arellano admitted to committing each of them.[1] The prosecutor then read the factual basis for the charge, which included that "Arellano knew that the amounts involved during the term of the conspiracy involved at least 3.5 kilograms but less than 5 kilograms[2] of a mixture or substance containing a detectable amount of cocaine" and that "Arellano's role in the conspiracy was to supply co-conspirators with kilogram quantities of cocaine from various sources." Arellano agreed that everything that the prosecutor had recited was accurate.

[FN1] One of those elements was "that the defendant knew or reasonably should have known that the scope of the conspiracy involved 500 grams or more of a mixture or substance containing a detectable amount of cocaine."

[FN2] Although the same statutory minimum sentence applies for offenses involving anywhere between five hundred grams and five kilograms of cocaine, *see* § 841(b)(1), the sentencing guidelines operate on a more granular level, *see* U.S. Sentencing Guidelines Manual § 2D1.1(c).

The magistrate judge then asked Arellano to describe, in his own words, what he had done that violated the law. Arellano stated, "I was asked to do a favor, deliver a package to a friend. And I showed up. I turned it over. . . . And agents came and arrested me. . . ." The magistrate judge interrupted, asking, "Did you know what was in the package?" to which Arellano responded, "No, ma'am." The magistrate judge then told Arellano that she could not accept his guilty plea, leading to an off-the-record discussion between Arellano and his counsel [footnote omitted]. The magistrate judge told Arellano that "there has to be a factual basis to support [his] plea of guilty" and that if he "didn't know what [he was] delivering, then there is not a factual basis to support the plea." After conferring further with his client, Arellano's trial counsel said, "I think we're done, your Honor," and the hearing was adjourned.

The government issued a superseding indictment, again charging Arellano with conspiracy to possess five kilograms of cocaine with intent to distribute, as well as for possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). The case proceeded to trial.

Before the trial began, the district court asked whether, despite the plea offers that it "presume[d]" that Arellano had received, Arellano wanted "to maintain [his] innocence and go to trial." Arellano stated that he did. At trial, Arellano was acquitted of the firearm-possession charge but convicted of the drug-conspiracy charge. The jury specifically found that Arellano "was individually responsible for or could reasonably have foreseen that the conspiracy involved" at least five kilograms of cocaine.

The presentence investigation report determined that Arellano's base offense level was 30, because his offense involved between five and fifteen kilograms of cocaine, and that his offense level should be increased by two, because Arellano possessed a dangerous weapon—that is, the firearm—in relation to the crime. Arellano's counsel filed no objections to the presentence report and confirmed his lack of objections at the sentencing hearing. The district court adopted the presentence report's factual findings and guideline calculations and

sentenced Arellano to 188 months' imprisonment, at the high end of the guideline range.

*United States v. Arellano*, 792 F. App'x 306, 307-09 (5th Cir. 2019).[1]

Movant filed a direct appeal to the Fifth Circuit. On appeal, Movant raised the following issues:

1.      It was error for the magistrate judge to refuse Movant's guilty plea.

2.      The evidence failed to connect Movant to at least five kilograms of cocaine.

3.      Movant's sentence enhancement for possession of a weapon was unsupported by the evidence.

The Fifth Circuit affirmed the Movant's conviction and sentence on December 3, 2019. *Id.*

On February 1, 2021, Movant filed this motion (Dkt. #1) pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence and a memorandum (Dkt. #1-1) in support of the motion. Movant asserts that he is entitled to relief based on ineffective assistance of counsel. The Government filed a response (Dkt. #15), asserting Movant's claims are without merit. The Government attached the affidavit (Dkt. #15-1) of Movant's trial counsel, Heath Hyde, to its response. Movant filed a reply. (Dkt. #16).

## II.  STANDARD FOR FEDERAL HABEAS CORPUS PROCEEDINGS

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). In a § 2255 proceeding, a movant may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow. A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-1301 (5th Cir. 1992) (citations

---

[1] The undersigned presided over the trial of this case.

omitted). A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). Conclusory allegations, which are unsupported and unsupportable by anything else contained in the record, do not raise a constitutional issue in a habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983). The role of § 2255 has been defined by the Fifth Circuit as follows:

> Section 2255 provides relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack.

*United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). "Section 2255 does not reach errors of constitutional or jurisdictional magnitude that could have been reached by a direct appeal." *Id.* Similarly, "issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)); *United States v. Goudeau*, 512 F. App'x 390, 393 (5th Cir. 2013).

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Movant couches all of his claims in terms of receiving the ineffective assistance of counsel. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires the defendant to show the performance was deficient and the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700. A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir.

1995). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonably professional judgment. *Strickland*, 466 U.S. at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

A movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Movant must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove the prejudice component, a court need not address the question of counsel's performance. *Id.* at 697.

## A.  Rejection of the Plea

Movant contends that his trial counsel provided ineffective assistance by failing to object to the magistrate judge's rejection of his plea. Movant complains that his counsel "failed to advise [him] not to minimize his accountability during allocution"[2] at the change-of-plea hearing and failed to object to the magistrate judge's "truncation" of his "right to allocute" during the hearing. (Dkt. #1-1, p. 9).

To reiterate, during the plea hearing, when the magistrate judge asked Movant to describe, in his own words, what he had done that violated the law, Movant responded, "I was asked to do a favor, deliver a package to a friend. And I showed up. I turned it over. And they said to wait; so, I waited. And agents came and arrested me. . . ." Crim. ECF (Dkt. #141 pp. 13-14); *see also Arellano*, 792 F. App'x at 308. The magistrate judge interrupted, asking, "Did you know what was in the package?" to which Arellano responded, "No, ma'am." Crim. ECF (Dkt. #141 p. 14); *see*

---

[2] Movant's reference to his "allocution" was really his response to the magistrate judge's invitation for Movant to put in his own words the criminal conduct that made the basis of his guilty plea.

*also Arellano*, 792 F. App'x at 308. The magistrate judge then told Movant that she could not accept his guilty plea, leading to an off-the-record discussion between Movant and his counsel. Crim. ECF (Dkt. #141 p. 14); *see also Arellano*, 792 F. App'x at 308. Thereafter, trial counsel explained, "this has not been an issue before." Crim. ECF (Dkt. #141 p. 14). The magistrate judge told Movant that "there has to be a factual basis to support [his] plea of guilty" and that if he "didn't know what [he was] delivering, then there is not a factual basis to support the plea." Crim. ECF (Dkt. #141 p. 14); *see also Arellano*, 792 F. App'x at 308. After conferring further with Movant, his trial counsel stated, "I think we're done, your Honor," and the hearing was adjourned. Crim. ECF (Dkt. #141 pp. 14-15); *see also Arellano*, 792 F. App'x at 308.

Movant's counsel explained in his affidavit that although he does "not remember the specifics of the conversation, . . . in reviewing the case, [he] probably asked [Movant] what he was doing or trying to pull because there were phone messages leading to [Movant] arriving at the designated drug transfer spot with the confidential source with 5 kilos of cocaine and a loaded weapon." (Dkt. #15-1). Trial counsel also averred that he does "not submit plea papers" that are not "signed and agreed to by [his] client" and surmised that there were "active jailhouse lawyers in Fannin County Jail" at the time of Movant's change of plea hearing. (Dkt. #15-1). Clearly, trial counsel was caught off guard when Movant stated that he did not know what was in the package he was delivering. Trial counsel cannot be blamed for Movant's apparent last minute decision at the change of plea hearing to deny knowledge of the package's contents. It was Movant's prerogative to plead guilty and agree to the factual basis for the plea.

Movant presents no evidence that he wished and was willing to plead guilty after the change of plea hearing and before trial. Indeed, before the trial began, the prosecutor explained to the Court that "several plea offers ha[d] been made and [Movant] ha[d] rejected them[.]" Crim.

ECF (Dkt. #146, p. 9). Movant's counsel also informed the Court that he had explained to Movant

that punishment could be harsher if he proceeded to trial than if he were to plead guilty, but that

Movant had "maintained his innocence on the case" and "indicated a desire for trial." Crim. ECF

(Dkt. #146, p. 9). After Movant was sworn in by the Court, Movant affirmed under oath that his

trial counsel had explained to him that if he went to trial and lost his "sentence would be a lot more

than any of the discussions that [Movant and his counsel] had in regards to a plea," but that it was

Movant's "desire to maintain [his] innocence and go to trial[.]" Crim. ECF (Dkt. #146, p. 10).

Movant also affirmed that "his desire to go to trial" had not changed after the Government "filed

an enhancement in regards to the case that would enhance the punishment." Crim. ECF (Dkt. #146,

pp. 10-11). The Court specifically asked if Movant understood that "the Government . . . filed an

enhancement, and if that enhancement applies and you're convicted, you're looking at a minimum

20 year sentence . . . [u]p to life," and Movant responded in the affirmative. Crim. ECF (Dkt. #146,

p. 11). Finally, the Court inquired: "Despite these things—of course, the Court is not involved in

any of the plea negotiations, not involved in any way, but you have had some plea offers for less

than that, I presume, and—but you have rejected those and still want to go to trial?" Crim. ECF

(Dkt. #146, p. 11). Movant responded, "Yes, sir." Crim. ECF (Dkt. #146, p. 11).

     In evaluating Movant's claim on direct appeal concerning the magistrate judge's refusal to

accept Movant's guilty plea, the Fifth Circuit found as follows:

> A criminal defendant has "no absolute right to have a guilty plea accepted."
> *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).
> Indeed, a district court may not accept a guilty plea unless it has first "determine[d]
> that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "The factual
> basis cannot be implied from the fact that the defendant entered a plea"; rather,
> "[t]he sentencing court must satisfy itself, through an inquiry of the defendant or
> examination of the relevant materials in the record, that an adequate factual basis
> exists for the elements of the offense." *United States v. Adams*, 961 F.2d 505, 508
> (5th Cir. 1992); *see also Santobello*, 404 U.S. at 261, 92 S.Ct. 495 ("[T]he
> sentencing judge must develop, on the record, the factual basis for the plea, as, for

example, by having the accused describe the conduct that gave rise to the charge."). Once this requirement is satisfied, the district court may still reject the guilty plea for "good reason." *United States v. Martinez*, 486 F.2d 15, 20 (5th Cir. 1973).[4] This decision "is committed to the 'sound judicial discretion' of the trial judge." *Id.* (quoting *Santobello*, 404 U.S. at 262, 92 S.Ct. 495); *cf. United States v. Foy*, 28 F.3d 464, 472 (5th Cir. 1994) ("A district court's rejection of a plea agreement is reviewed for abuse of discretion.").[5]

> [FN4] Both parties cite to *Winters v. Cook*, 489 F.2d 174, 179 (5th Cir. 1973), in which we spoke of a "right to plead guilty." That language, however, was meant to distinguish decisions that defense attorneys may make from those that must be made by defendants themselves. *See id.* at 178-80. Although criminal defendants have a "personal fundamental right" to decide for themselves whether to plead guilty, *id.* at 179, it is a longstanding principle that they have no "absolute right" for their guilty pleas to be accepted, *Martinez*, 486 F.2d at 20 (quoting *Lynch v. Overholser*, 369 U.S. 705, 719, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962)), which is what this case is about.

> [FN5] The parties dispute the consequence of Arellano's failure to object to the court's refusal to accept his guilty plea. Citing a case involving the related but distinct context of a challenge to an acceptance of a guilty plea, *United States v. Reyes*, 300 F.3d 555, 558 (5th Cir. 2002), Arellano argues that our review is for plain error. By contrast, the government asserts that Arellano's pretrial statement that he wished to proceed to trial, *see supra* Part I, waived his right to appeal altogether. Because we conclude that the magistrate judge acted well within her discretion, we need not address this issue.

The record in this case contains no suggestion that the magistrate judge abused her discretion in refusing to allow Arellano to plead guilty while maintaining that he was unaware that he was transporting cocaine. The prosecution's theory of the drug conspiracy was that Arellano was a courier. This theory followed straightforwardly from the evidence: undercover officers had arranged to purchase cocaine from a target, and Arellano was the man who showed up with the drugs. Thus if Arellano did not know that he was delivering drugs, then it would be difficult to conclude that he "knew of the existence of the agreement," a necessary element of the offense, *United States v. Thomas*, 690 F.3d 358, 366 (5th Cir. 2012).

Arellano argues that denying knowledge of the contents of his delivery did not destroy the factual basis for his guilty plea because he had admitted to the prosecutor's recitation of the facts—which included his knowing about the drug conspiracy—and delivering anything in furtherance of that conspiracy would have been criminal. While Arellano may be correct that a conviction for conspiring to

possess drugs does not necessarily require possession of drugs, he did not say anything about a drug conspiracy when summarizing his conduct. Rather, he stated only that he was "deliver[ing] a package to a friend," in language that failed to inculpate him whatsoever. Moreover, after having two opportunities to discuss the issue with his counsel, he made no attempt to amend his statement or otherwise explain what made him guilty of the crime charged. Instead, his counsel ended the hearing.[6] Under the circumstances, we cannot say that the magistrate judge abused her discretion in rejecting the plea.

> [FN6] The record reveals no subsequent attempt by Arellano to plead guilty.

*Arellano*, 792 F. App'x at 309-10.

The Fifth Circuit reviewed Movant's underlying claim that the magistrate judge erred in refusing Movant's guilty plea. Because the Fifth Circuit found Movant's underlying claim lacked merit, it follows that the ineffective assistance of counsel claim for failing to object to the magistrate judge's refusal to accept Movant's plea also lacks merit. Indeed, "counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless." *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *see also United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (an ineffective assistance claim cannot be based on "an attorney's failure to raise a meritless argument"); *Williams v. Director, TDCJ-CID*, No. 1:06-cv-230-KFG, 2012 WL 5609644 (E.D. Tex. Sep. 21, 2012) (finding no ineffective assistance of counsel claim for failure to object because admission of evidence was not erroneous and any objection to admission of said evidence would have been overruled). Moreover, the record refutes any allegation by Movant that he wanted to plead guilty but for his counsel's advice or deficient performance at the change of plea hearing. Movant's claim fails.

## B.  Failure to Investigate

Movant also argues that his trial counsel provided ineffective assistance by failing to adequately investigate the case. Specifically, Movant alleges that he provided trial counsel with

evidence of phone calls between himself, his co-defendant, and the confidential source ("CS") that purportedly showed Movant was unaware that he was transporting cocaine, and that trial counsel should have investigated the backgrounds and motivations of his co-defendant and the CS. Movant argues that further investigation would have revealed "the lack of criminal relationship between the codefendants" and the "true story" of Movant's involvement "on the day of his arrest." (Dkt. #1-1, pp. 7-8).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. In assessing unreasonableness, a heavy measure of deference must be applied to counsel's judgments. *Id.* In order to establish that counsel was rendered ineffective by virtue of a failure to investigate, a convicted defendant must do more than merely allege a failure to investigate—he must state with specificity what the investigation would have revealed and how it would have altered the outcome of the case. *Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000); *United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000); *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Furthermore, counsel is "not required to pursue every path until it bears fruit or until all conceivable hope withers." *Lovett v. State of Florida*, 627 F.2d 706, 708 (5th Cir. 1980). Although an attorney's failure to investigate a witness who has been identified as crucial may indicate an inadequate investigation, the failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance. *United States v. Cockrell*, 720 F.2d 1423, 1428 (5th Cir. 1983); *Gray v. Lucas*, 677 F.2d 1086, 1093 n.5 (5th Cir. 1982).

Movant fails to allege with specificity what the investigation into his co-defendant or the CS would have revealed and how it would have altered the outcome of his trial. Specifically, Movant fails to show that further investigating or interviewing his co-defendant or the CS would

have revealed exculpatory evidence beneficial to Movant. Because Movant has failed to demonstrate *Strickland* prejudice, his claim that trial counsel failed to investigate fails.

## C.  Failure to Call Witnesses

Movant further claims that his trial counsel provided ineffective assistance by failing to call his wife and coworker as witnesses to testify regarding the retrieval of his truck, instead of simply accepting the Government's version of the facts. (Dkt. #1-1, p. 8).

Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). For this reason, a movant making claims of ineffective assistance based on counsel's failure to call a witness is required to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. *Id.*; *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). This requirement applies to both uncalled lay and expert witnesses. *Woodfox*, 609 F.3d at 808.

Movant meets none of these requirements. His conclusory assertion that trial counsel failed to call his wife and coworker as witnesses is unsupported by evidence in the record and affords him no basis for habeas relief. *See Ross*, 694 F.2d at 1011-12.

## D.  Inadequate Cross-Examination

Next, Movant argues that his trial counsel provided ineffective assistance by failing to effectively cross-examine Task Force Officer Huerta. Movant asserts that trial counsel allowed Officer Huerta "to speculate in a manner unfavorable" to Movant. (Dkt. #1-1, p. 8).

"Speculating about the effect of tinkering with the cross-examination questions is exactly the sort of hindsight that *Strickland* warns against." *Castillo v. Stephens*, 640 F. App'x 283, 292 (5th Cir. 2016) (citing *Strickland*, 466 U.S. at 689). Furthermore, to prove that an attorney's cross examination was constitutionally ineffective, a movant must show "how a different cross-examination would have created a reasonable probability of a different outcome." *Id.*

Movant does not identify Officer Huerta's specific "unfavorable" testimony or allege with specificity how a different cross-examination would have created a reasonable probability of a different result. Movant's claim rests entirely on conclusory allegations, which are insufficient to obtain habeas relief. *See Ross*, 694 F.2d at 1011-12.

**E.  Failure to Object to Admission of Movant's Criminal History**

Movant also asserts that his trial counsel provided ineffective assistance by failing to effectively object to his criminal history being admitted into evidence. Movant alleges that trial counsel's failure to "maintain" an objection to the admissibility of his criminal history prejudiced him because it "limited [his] options on direct appeal." (Dkt. #1-1, p. 8).

The record demonstrates that trial counsel objected to the admission of Movant's criminal history, but the district court overruled it. Crim. ECF (Dkt. #147, pp. 175-78). That counsel's objection was unsuccessful does not constitute ineffective assistance of counsel. *Youngblood v. Maggi*o, 696 F.2d 407, 410 (5th Cir. 1983). Movant fails to show how any further or continuing objection by trial counsel would have resulted in a different ruling by the district court. Furthermore, contrary to Movants contention, trial counsel's objection would have preserved the issue for appellate review. Movant's claim is based purely on conclusory allegations and is not supported by the record; therefore, the claim affords him no basis for habeas relief. *See Ross*, 694 F.2d at 1011-12.

**F.  Failure to Object at Sentencing**

Movant further contends that his trial counsel provided ineffective assistance by failing to make any objections to the presentence report or at the sentencing hearing. Movant alleges that trial counsel should have "focused the Court's attention toward a sentence at the low end" of the guideline sentencing range of 151-188 months' imprisonment. (Dkt. #1-1, p. 9).

As an initial matter, the transcript of the sentencing hearing reflects that Movant's trial counsel did in fact argue for a sentence at the low end of the guideline range:

> I think the thing that would be significant in this case was obviously he would be more characterized as a mule than the ring leader in this transaction. And based on that and what his actions were, we would just ask that you sentence him to the 151 months at the low end of the range, based on his criminal background and what his actual role was in the offense.

Crim. ECF (Dkt #149, pp. 4-5). Furthermore, Movant does not clearly identify specific objections trial counsel should have made and how they would have affected the sentence imposed by the district court. Movant's conclusory allegations afford him no basis for habeas relief. *See Ross*, 694 F.2d at 1011-12.

To the extent Movant argues that trial counsel was ineffective for failing to object to the two-level increase for possession of a firearm based on his acquittal of the firearm possession charge, the claim is without merit. On direct appeal, the Fifth Circuit rejected Movant's argument that the district court erred by increasing his sentence based on his possession of a handgun at the time of his arrest. *See Arellano*, 792 F. App'x at 311-12. The Fifth Circuit found as follows:

> Although the jury did not find beyond a reasonable doubt that Arellano possessed a firearm in furtherance of a drug-trafficking crime, Arellano acknowledges that [the] district court needed only a preponderance of the evidence to find a connection between the gun and the crime.[8] Still, he argues that the circumstances in which the gun was found—unloaded, in a zippered pouch inside a larger zippered bag along with his clothing and toiletries—made it improbable that there was any connection between the drug deal and the gun.

[FN8] "[A] sentencing court may consider conduct of which a defendant has been acquitted." *United States v. Watts*, 519 U.S. 148, 154, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997).

Under the sentencing guidelines, "[t]he government may satisfy its burden of proving a connection by 'providing evidence that the weapon was found in the same location . . . where part of the transaction occurred.'" *United States v. Mitchell*, 31 F.3d 271, 278 (5th Cir. 1994). Here, it was. Thus, the district court could apply the sentence enhancement "unless it was clearly improbable that the handgun was connected to the drug transaction." *United States v. Paulk*, 917 F.2d 879, 882 (5th Cir. 1990). In this regard, we have said that the enhancement can apply even when the gun at issue is inoperable, unloaded, and locked in a glove compartment. *See id.* Given this caselaw, the district court's finding of a connection was not clearly or obviously erroneous.

*Arellano*, 792 F. App'x at 311-12. Because the Fifth Circuit found that Movant's underlying claim regarding the increase of his sentence based on his possession of a handgun lacked merit, it follows that any ineffective assistance of counsel claim for failing to object to such increase lacks merit. Movant has failed to demonstrate that he is entitled to habeas relief based on trial counsel's representation during sentencing.

## G.  Failure to Request a Lesser-Included Offense Instruction

Movant further argues that his trial counsel provided ineffective assistance by failing "to move for a verdict as to the lesser included offense of simple possession." (Dkt. #1-1, pp. 8-9). The court understands Movant to assert that trial counsel should have requested a jury instruction that would have allowed the jury to convict him of the lesser-included offense of "simple possession" of cocaine rather than conspiracy to possess with intent to distribute cocaine.

A defendant is entitled to a lesser included offense instruction if: (1) the elements of the lesser offense are a "subset of the elements of the charged offense"; and (2) the evidence is such that "a jury could rationally find the defendant guilty of the lesser offense and not guilty of the charged offense." *United States v. Harrison*, 55 F.3d 163, 166 (5th Cir. 1995). "Simple possession is not a lesser included offense of a drug conspiracy[.]" *United States v. Krout*, 66 F.3d 1420, 1432

(5th Cir. 1995). Thus, as a matter of law, Movant was not entitled to a lesser included offense instruction on simple possession. Because Movant was not entitled to a lesser included offense instruction, any request by trial counsel would have been futile, because the request would have been denied. Trial counsel was not ineffective for failing to make a meritless request for a lesser included offense instruction on simple possession. *See. Kimler*, 167 F.3d at 893; *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections"). Therefore, Movant's claim is without merit.

**H.  Meaningful Adversarial Testing**

Movant asserts that his trial counsel failed to put the Government's case to any meaningful adversarial testing through his alleged professional errors identified above.

Usually, a movant must satisfy both prongs of the *Strickland* two-part test. However, the Supreme Court has recognized an exception in which prejudice is presumed where defense counsel "*entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Bell v. Cone*, 535 U.S. 685, 697 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)) (emphasis in original). However, for prejudice to be presumed, "an attorney must completely fail to challenge the prosecution's case, not just individual elements of it." *Haynes v. Cain*, 298 F.3d 375, 380-81 (5th Cir. 2002) (citing *Bell*, 535 U.S. at 697). Further, "the distinction between counsel's failure to oppose the prosecution entirely and the failure of counsel to do so at specific points during the trial is a 'difference . . . not of degree but of kind." *Id.* at 381 (quoting *Bell*, 535 U.S. at 697). "When the defendant receives at least some meaningful assistance, he must prove prejudice in order to obtain relief for ineffective assistance of counsel." *Gochicoa v. Johnson*, 238 F.3d 278, 285 (5th Cir. 2000) (quoting *Goodwin v. Johnson*, 132 F. 3d 162, 176 n.10 (5th Cir. 1997)).

In this case, a review of the record shows that Movant's trial counsel subjected the prosecution's case to a meaningful adversarial testing. Trial counsel cross-examined nearly every government witness, and he did not accept the Government's version of the facts and argued against them during closing argument. Crim. ECF (Dkt. #148, pp. 17-22). Moreover, the jury acquitted Movant of the § 924(c) charge. Thus, Movant has failed to show a complete failure to challenge the prosecution's case. Movant's adversarial testing claim is without merit.

## I.  Ineffective Assistance of Appellate Counsel[3]

Finally, Movant asserts that his appellate counsel provided ineffective assistance by failing to raise meritorious issues on direct appeal. Specifically, Movant alleges that appellate counsel should have challenged the district court's ruling regarding the admissibility of Movant's prior drug conviction and the sufficiency of the evidence to support his conviction. (Dkt. #1-1, pp. 10-11).

A claim asserting ineffective assistance of appellate counsel is reviewed under *Strickland*'s performance and prejudice prongs. *See Henderson v. Quarterman*, 460 F.3d 654, 665 (5th Cir. 2006) (recognizing that *Strickland* applies to ineffective assistance of appellate counsel claims). A movant alleging ineffective appellate representation "must first show that his counsel was objectively unreasonable . . . in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them" and then "demonstrat[e] prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). Appellate counsel "need not (and should not) raise every nonfrivolous

---

[3] Movant was represented on appeal by different counsel than represented him before the district court. *Arellano,* 792 F. App'x at 308 n.3.

claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* at 288 (citing *Jones v. Barnes*, 463 U.S. 74 (1983)). Thus, it is possible that an ineffective assistance claim may be "based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Id.* (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). To demonstrate that a failure to raise an issue was deficient, a movant must show that a particular nonfrivolous issue was clearly stronger than issues that counsel did present. *Id.*

Movant fails to show that appellate counsel should have raised a particular issue that was stronger than the issues counsel presented on appeal or that had appellate counsel raised the issues Movant identifies above he would have prevailed on appeal. First, Movant fails to demonstrate that an argument challenging the district court's Rule 404(b) ruling would have been successful on appeal. The district court found that Movant's prior conviction for possession of controlled substance was relevant to Movant's intent and that the probative value of the evidence outweighed any prejudice to Movant. Crim. ECF (Dkt. #147, pp. 175-77). The Fifth Circuit has held that evidence of a defendant's prior conviction for possession of a controlled substance is admissible in a trial for drug conspiracy. *See, e.g.*, *United States v. Santacruz*, 278 F. App'x 342, 344 (5th Cir. 2008) (evidence of prior conviction for possession of marijuana admissible under Rule 404(b) in trial for conspiracy to import, distribute and possess with intent to distribute methamphetamine); *United States v. Broussard*, 80 F.3d 1025, 1039-40 (5th Cir. 1996) (evidence of prior conviction for possession of marijuana admissible in trial for cocaine conspiracy). Additionally, the district court gave a proper limiting instruction regarding the evidence. Crim. ECF (Dkt. #119, pp. 12-13). *See United States v. Thomas*, 348 F.3d 78, 86 (5th Cir. 2003) (stating that any prejudicial effect of Rule 404(b) evidence may be minimized by instructing the jury to use the evidence for a limited

17

purpose). In light of the Fifth Circuit case law and facts of this case, Movant has failed to show that the Fifth Circuit would have ruled in his favor on appeal.

Second, Movant's appellate counsel did raise the issue of sufficiency of the evidence with regard to the jury's finding that Movant was responsible for at least five kilograms of cocaine, but the Fifth Circuit rejected the challenge. *Arellano*, 792 F. App'x at 310-11. Because trial counsel did not move for a judgment of acquittal, the Fifth Circuit applied the plain error standard of review:

> Reversal on plain-error review requires "an error or defect" that is "clear or obvious" and that "affected the appellant's substantial rights." *Puckett v. United States*, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (citing *United States v. Olano*, 507 U.S. 725, 732-34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). In a challenge to the sufficiency of evidence, "an error is 'clear or obvious' only if the record is devoid of evidence pointing to guilt, or the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *United States v. Suarez*, 879 F.3d 626, 630-31 (5th Cir. 2018) (cleaned up) (quoting *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007)). If the district court committed such an error, we then have "the discretion to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Puckett*, 556 U.S. at 135, 129 S.Ct. 1423 (alteration in original) (quoting *Olano*, 507 U.S. at 736, 113 S.Ct. 1770).

> The question at issue here is whether there was sufficient evidence to support the jury's finding that Arellano "was individually responsible for or could reasonably have foreseen that the conspiracy involved" at least five kilograms of cocaine. *See United States v. Gonzalez*, 907 F.3d 869, 874 (5th Cir. 2018) (noting that defendant will be held liable for "only those amounts of drugs that he knew or reasonably could have known or believed were involved in the conspiracy" (citation omitted)). It is undisputed that Arellano had been in possession of only 4.949 kilograms of cocaine when he was arrested.[7] And although the government points to an array of evidence that their target dealt in larger quantities of cocaine, the government identifies no direct evidence that Arellano himself was involved in or aware of any drug deals other than the one during which he was arrested.

> > [FN7] The government argues that Arellano was supposed to be delivering five kilograms, but their evidence for that is an agreement to which Arellano was not a party. Although Arellano was ultimately entrusted with the delivery, there is no evidence that he knew how much cocaine the undercover officer was expecting to receive.

> On the other hand, a rational jury could have concluded that Arellano would have reasonably foreseen that the drug deal he was taking part in, which involved the use of a car with a secret compartment, was not the full extent of the conspiracy. *Cf. Gonzalez*, 907 F.3d at 875 ("[A]n individual dealing in a sizable amount of controlled substances ordinarily would be presumed to recognize that the drug organization with which he deals extends beyond his universe of involvement." (citation omitted)). Or a rational jury could have concluded that Arellano, who had in his possession a handgun with an obliterated serial number and three cell phones, was more than a one-time courier. To be sure, this is not strong evidence that Arellano foresaw that the conspiracy involved additional cocaine, but under the plain-error standard of review, "close calls must be resolved in favor of the jury verdict," *Delgado*, 672 F.3d at 332 n.11. This is one such call. Arellano has not demonstrated plain error.

*Arellano*, 792 F. App'x at 310-11.

The fact that appellate counsel's argument was not successful on appeal does not equate to ineffective assistance of counsel. *See Youngblood*, 696 F.2d at 410. Furthermore, Movant fails to identify any meritorious sufficiency of the evidence argument that his appellate counsel failed to raise, and he fails to show that, but for appellate counsel's failure to raise such argument, the result of the appeal would have been different. Therefore, Movant's allegations of ineffective assistance of appellate counsel are without merit.

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Movant has not yet filed a notice of appeal, the Court, nonetheless, addresses whether Movant would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional

right on the issues before the court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a [certificate of appealability] should issue when the movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, Movant is not entitled to a certificate of appealability.

## V.  CONCLUSION AND ORDER

In sum, Movant fails to show a complete failure by his trial counsel to challenge the prosecution's case or that, but for trial counsel's alleged deficient performance, the result of the proceedings would have been different. Additionally, Movant fails to identify any meritorious argument that his appellate counsel failed to raise, and he fails to show that, but for appellate counsel's failure to raise such argument, the result of the appeal would have been different.

It is therefore **ORDERED** the motion to vacate, set aside, or correct sentence is **DENIED**, and the case is **DISMISSED** with prejudice. A certificate of appealability is **DENIED**. It is further **ORDERED** that all motions by either party not previously ruled on are **DENIED**.

**SIGNED this 9th day of September, 2024.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE